UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

**CITY OF LINCOLN CITY,**
       Plaintiff,

v.

**ROADS END SANITARY DISTRICT,
MICHAEL and KRYSTI COURSEY,
et al,**
       Defendant.

Civil No.06-1001-TC
**ORDER**

COFFIN, Magistrate Judge:

    Plaintiff Lincoln City filed this action against Roads End Sanitary District and several individual defendant land owners. The complaint seeks a declaratory judgment validating the City's program to annex the Roads End area. Such annexation program is opposed by defendants.

    Presently before the court are cross motions (#61 and #65) for summary judgment. For the reasons stated below, defendants' motion for summary judgment is denied, plaintiff City's motion for summary judgment is allowed, and the City's program to annex the Roads End area is declared valid.

Page 1 ORDER

## Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Id. at 32. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355 (1986); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).

Page 2 ORDER

## DISCUSSION

The City is currently providing water service to property owners in Roads End, an unincorporated area outside the City borders, but within its Urban Growth Boundary. When the person responsible for paying water bills is changed, the City is making continued provision of water service contingent on property owners giving consent to annex Roads End to the City.

Grant Agreement

On January 13, 1978, the City and the United States, through the Farmers Home Administration and the Department of Agriculture [USDA], entered into an agreement in which the government gave a grant, and not a loan, of $590,000 to the City to help pay for a new water system.

Defendants assert that the City's annexation program violates the Grant Agreement between the City and the USDA. Defendants maintain that they are third party beneficiaries of the Grant Agreement and have the right to enforce its provisions and require specific performance of the asserted terms of the Grant Agreement. Defendants note that the Grant Agreement provides that the City will "[m]anage, operate and maintain the [water] system ...continuously in an efficient and economical manner." Paragraph 3 of Exhibit B to #73. Defendants contend that the Grant Agreement and the aforementioned paragraph in the Grant Agreement require the provision of continuous water to Roads End. P. 5 of Defendants' Memo (#67).

However, as the USDA(in an amicus brief (#75)) and the City persuasively point out, the Grant Agreement issues are not justiciable because 1) the USDA is not a party to this case due to sovereign immunity, and 2) the Grant Agreement reserves all rights of waiver and enforcement under the Agreement exclusively to the USDA.

The following enforcement provisions were included in the Grant Agreement:

> Upon any default under its representations or agreements set forth in the instrument, Grantee, at the option and demand of Grantor, will, to the extent legally permissible, repay to Grantor forthwith the original principle amount of the grant stated hereinabove, with interest at the rate of 5 percentum per annum from the date of the default. The provisions of the Grant Agreement may be enforced by the Grantor,

Page 3 ORDER

> at its option and without regard to prior waivers by it or previous defaults of Grantee, by judicial proceedings to require specific performance of the terms of this Grant Agreement or by such other proceedings in law or equity, in either Federal or State courts, as may be deemed necessary by Grantor to assure compliance with the provisions of this Grant Agreement and the laws and regulations under which this grant is made.

Paragraph 10 of Exhibit B to #73.

Because the Grant Agreement reserves all rights of waiver and enforcement under the Grant Agreement exclusively to the USDA, this court cannot award defendants a remedy under the Grant Agreement, whether or not there is a breach of the Grant Agreement. This is because, even if there is a breach (which the City and USDA assert is not the case), the USDA has the exclusive right to waive breaches, to decide whether or not to seek remedies for breaches, and, if it wants to seek a remedy, to decide what remedy to seek.

Defendants assert that the purpose of the Grant Agreement was to benefit Roads End owners, residents and visitors.[1] Defendants then assert that, as such, owners, residents and visitors have the right to enforce the Grant Agreement. However, as the City and USDA demonstrate, being a person who benefits from a government contract does not automatically include the right to enforce that

---

[1] I reject defendants earlier contention that the Grant Agreement and Paragraph 3 thereto require the provision of continuous water(i.e. in perpetuity) to Roads End. The content of the Grant Agreement does not support the defendants' argument. As previously stated, the Grant Agreement merely provides that the City will "[m]anage, operate and maintain the [water] system ...continuously in an efficient and economical manner." Paragraph 3 of Exhibit B to #73. Moreover, it should be noted that, on June 28, 1978, shortly after the Grant Agreement was executed, the City and Roads End Water District entered into a document entitled "Agreement" that stated, in part:
> WHEREAS, the City is supplying water to the inhabitants of the District and is in the process of constructing a new water supply system within the boundaries of the District; and
> WHEREAS, the City is prepared to continue serving the inhabitants of the District for twenty-five (25) years...
> 1. The City will complete construction of the new water system, which is presently under construction, and will continue supplying the inhabitants within the boundaries of the District with water for a period of twenty-five (25) years.

Exhibit 3 to #73.
The contemplated limited period of 25 years has expired.

Page 4 ORDER

contract. Rather, to have enforcement rights, a benefitted person must show an intention that that person has enforcement rights. Here, to the contrary, the Grant Agreement is clear that the United States, and only the United States has enforcement rights. Before a third party can recover under a contract, the party must show that the contract was made for his or her direct benefit- that he or she is an intended beneficiary of the contract. Klamath Water Users Protective Association v. Patterson, 204 F.3d 1206, 1210 (9th Cir.2000) . To sue as a third party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract. Id. at 1211. Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary. Id. at 1211, citing Restatement of Contracts §313(2). "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." Id. at 1211. The defendants in this action are assumed to be incidental beneficiaries as there is nothing in the contract that adequately manifests a different intention. Further underscoring the fact that defendants have no enforceable rights under the Grant Agreement, the contract specifically provides:

> In *its sole discretion*, Grantor may at any time give any consent, deferment, subordination, release, satisfaction, or termination of any or all of Grantee's grant obligations, with or without valuable consideration, upon such terms and conditions as Grantor may determine to be (a) advisable to further the purposes of the grant or to protect Grantor's financial interest therein and (b) consistent with both the statutory purposes of the grant and the limitations of the statutory authority under which it is made.

2nd Paragraph 3 at P. 2 of Exhibit B to #73(emphasis added).

Since this Court cannot give a remedy arising from the Grant Agreement, there is no justiciable controversy and this court lacks jurisdiction over the Grant Agreement issues.

### The Effect of the City Already Providing Water Service to Roads End; Asserted Voting Rights

Defendants note that obtaining consents to annexation is legal, but makes much of the fact that the water service and water system are already in existence, and also that the legislature did not intend the consent to annexation statute of ORS 222.115 to be used to allow a City to shut off water and create a health hazard in order to "force residents to consent" to annexation. P. 9-10 of Defendants' Reply (#85). Defendants concede that under Oregon law, if the City were not presently providing water services to Roads End properties, the City could legally make the provision of water to the individual properties contingent on the property owners providing consents to annex. However, defendants argue that since the City is already providing water service to these properties, it cannot make its continued provision of water service contingent on property owners giving consent to annex when they have changed the person responsible for paying water bills.

Defendants do not cite a single case that supports the distinction they attempt to draw based on the fact that the City is already providing water service to Roads End. However, the City cites Bakies v. City of Perrysburg, 108 Ohio St.3d 361, 843 N.E.2d 1182 (2006). There, the City of Perrysburg required a consent to annex as a condition of continuing to receive water service. The Supreme Court of Ohio found the program to be valid. Such is not binding on this court, but is persuasive in light of the circumstances of this case. Moreover, as noted, defendants concede that if the City were not presently providing water services to Roads End, the City could legally make the provision of water to individual Roads End properties contingent on individual property owners providing consents to annex. Here, the City is conditioning the provision of water on property owners consenting to annexation whenever there is a change in the payor of the water bill. In most circumstances, the requested change in the person paying for water service will arise from the sale of property to a new person. The relationship between the new person and the City is the functional equivalent of the relationship between the City and the previous payor at the time of the initial water hook-up. Defendants agree that obtaining consents in the latter scenario would be

Page 6 ORDER

lawful. The attempted distinction based on already existing water service to a predecessor payor is without merit.

Based on the foregoing, the fact that the water system and water service are already in existence does not make the City's annexation program invalid. There is no legal impediment to the City's action under Oregon's statutes, law and Constitution. See also p.p. 2-7 of the City's Reply (#84). Nor is there a legal impediment to the City's action under the Constitution, statutes and law of the United States. Defendants argue that the "forced" consents are unconstitutional because the City's actions severely interfere with "rights" to vote on the annexation issue and the City's actions should be subject to strict scrutiny, citing Hussey v. City of Portland, 64 F.3d 1260 (9th Cir. 1995). However, Hussey is easily distinguishable in that Lincoln City's intended method of annexation involves only the consents of landowners and does not require consents from electors(registered voters). Hussey itself pointed out that a strict scrutiny test is not applicable to this method of annexation:

> Portland argues that its ordinance should only be subjected to the rational basis test, relying on Blackwell v. City of St. Charles, 726 F. Supp. 256 (E.D. Mo. 1989), aff'd per curriam, 917 F.2d 1150 (8th Cir. 1990). Although Blackwell does apply rational basis scrutiny to an annexation scheme similar to Portland's, the annexation there differed in one critical respect: landowners, and not voters, were asked to consent to annexation. As we scrutinize the Portland ordinance more closely only because it involves the consent of voters, which we equate with voting under the facts of this case, and not because it involves consents of landowners, Blackwell does not speak to the annexation proceedings at issue here.

Hussey, 64 F.3d at 1266.


Sewer Agreement

Defendants also have an argument based on a sewer agreement between the City and defendant Roads End Sanitary District. Under such agreement, the City agrees to accept sewage from the Sanitary District's system at a point of interconnection with the City's system, and, from there, carry

Page 7 ORDER

the Sanitary District's sewage to the City's sewage treatment plant and treat it. The agreement also calls for the City to provide the personnel to operate the District's system.

Defendants argue that the City has no authority to require consents to annex for the receipt of sewer services as such sewer services are provided by a governmental body other than the City, i.e., the County formed Roads End Sanitary District . In support, defendants cite Bear Creek Valley Sanitary Authority v. City of Medford, 130 Or. App. 24 (1994). However, Bear Creek is not applicable as Lincoln City is not currently requiring consents in exchange for sewer services. The City is only requiring consents for changes to water service that the City provides. The City's consent to annex program has no bearing at all on whether property owners will be allowed to maintain connections, or make new connections to the Sanitary District's sewer system. Defendants argue that sewer service is inextricably bound to water service and without water there can be no sewer service. Defendants argue that because of this the result of requiring consents for water service is the same as if the City were requiring consents for sewer services. See p. 9 of Defendants' Memo (#67). However, defendants cite no authority for their proposition that a city cannot require a consent to annex as a condition of receiving water service if the property receiving water service is connected to a different local government's sewer system. Further, the City notes that the City is not the only potential water source for defendants and that the City is willing to accept effluent from Roads End property owners at pipe connections, i.e., the City is not cutting off sewer services.

Defendants also argue that if the City is allowed to terminate water and "therefore sewer services," that the nonconsenting property owners and other residents of Roads End will very likely face a public health crisis and the legislature did not intend the statute authorizing consents to annexation to be used to threaten health and safety in exchange for annexation. Defendants contend that this court should declare the consent program invalid as a matter of public policy. However, defendants provide no pertinent authority for such contention and, as discussed above, the discontinuation of water services does not necessarily amount to the discontinuation of sewer

Page 8 ORDER

services. Moreover, property owners who choose to change the person responsible for paying the water bill can avoid the discontinuation of water service (and the asserted health hazards) by consenting to annexation.

The City can validly withhold water through its current annexation program if consent is not given and such does not amount to improper forced consent.

All of defendants' other arguments have been considered and found unpersuasive.

## CONCLUSION

Defendants' motion (# 65) for summary judgment is denied and plaintiff's motion (#61) for summary judgment is allowed. The City of Lincoln City's program to annex the Roads End area is valid and lawful. If defendants Morden, Sozzi and Falk do not comply with the requirements of the annexation program, the City has the right to terminate water to their Roads End properties. The consent to annex documents signed and provided to the City by defendants Kuhlman, Weir and York are valid. This action is dismissed in its entirety.

Dated this ___9___ day of April, 2008.

_____
Honorable Thomas M. Coffin
U.S. Magistrate Judge

Page 9 ORDER